**DECLARATION OF JEFFREY MARTIN**

The undersigned, Jeffrey Martin, declares as follows:

1. My name is Jeffrey O'Neal Martin. I hold a Bachelor's degree in Mathematics and Economics from Vanderbilt University and a Master's degree in Economics from the University of Chicago.

2. I am employed as a consultant on statistical issues, a consultant on actuarial issues, and as a consultant to political campaigns. I have been qualified as an expert on statistical issues in Federal Courts and State Courts.

3. Since 1997, I have been involved in cases involving challenges to the jury lists in Federal and State Courts.

4. I have been asked by counsel for Souleymane Balde to review the construction and implementation of the Master Jury Wheel and Qualified Jury Wheel that were used to select Grand Jurors in this case.

SUMMARY OF FINDINGS

5. All of the Grand Jurors in this case were selected from the Qualified Jury Wheel for the White Plains Division of the Southern District of New York.

6. My understanding is that Grand Jurors for the original indictment in this case came from the Manhattan Division instead of the White Plains Division of the Southern District of New York and that the trial jurors will be selected from the Manhattan Division.

7. In my experience of over 50 federal jury challenges and since 1997, the Grand Jury was selected from the same division as that of the trial or the Grand Jury was selected district wide while the trial was from a division in that district. Either way, the Grand Jury was selected from a community that included the community of the trial division. Until this case, I have not been involved in any jury challenge where the Grand Jury came from one division and the trial jury came from a different division.

8. For the purposes of this analysis, I have included census comparisons for the entire Southern District of New York as well as its two divisions of the Manhattan Division and the White Plains Division.

9. The racial, gender, and ethnicity demographics of the White Plains Division are substantially different from the demographics of the Manhattan Division.

10. The sole source of jurors for the Southern District of New York is the voter registration lists in the counties of the district as described in the Jury Plan Section IIIA (Amended Plan for the Random Selection of Grand and Petit Jurors in the United States District Court for the Southern District of New York dated February 13, 2009).

11. There are three large groups of registered voters that are systematically excluded by the Southern District of New York White Plains Division for reasons other than the statutory eligibility requirements or excusals from jury service despite Section IIIA of the Jury Plan.

12. Because the Master Jury Wheel is updated only every four years, persons who are 18 years old, 19 years old, or 20 years old could not serve on the Grand Jury in this case.

13. Because the Master Jury Wheel is updated only every four years, the effect of persons moving addresses, and potentially not receiving qualification forms or summons, is substantial. Black or African-American persons and Hispanic or Latino persons in the White Plains Division disproportionately move more frequently than the rest of the population.

14. The Qualified Jury Wheel under represent Black or African-American persons and Hispanic or Latino persons. The under representation is statistically significant.

15. There are systematic reasons for the under representation of Black or African-American persons and Hispanic or Latino persons.

JURY ELIGIBLE POPULATION IN THE SOUTHERN DISTRICT OF NEW YORK

16. The jury eligible population is defined as the population that is age 18 years and older who are citizens of the United States. While there are other requirements to serve as a juror besides age and citizenship, this definition is standard for the analysis of jury lists and is the basis for census numbers on the Administrative Office of the U.S. Courts' Form AO-12 ("Report on the Operation of the Jury Selection Plan").

17. The most current census numbers for the jury eligible population are the American Community Survey 5 Year Average numbers for 2018. These population figures will be used for this analysis.

18. The census numbers that have been used for Form AO-12 in the Southern District of New York are the same American Community Survey 5 Year Average numbers used in this analysis except that the supplied Form AO-12 in this case uses the year 2010 instead of 2018. There is a slight rounding problem on the form used by the Southern District of New York resulting in the total population being 100.32% for the Manhattan Division and 99.73% for the White Plains Division. Because the divisions work independently, there is not a district wide Form AO-12.

19. The jury eligible population for the entire Southern District of New York in 2018 is 62.14% White, 18.09% Black or African-American, 0.40% American Indian or Alaska Native, 5.53% Asian, 0.05% Native Hawaiian or Pacific Islander, 11.11% of some other race, and 2.68% multi-racial. The jury eligible population is 23.41% Hispanic or Latino. The jury eligible population is 46.81% Male and 53.19% Female.

20. The jury eligible population for the Manhattan Division in 2018 is 55.16% White, 20.92% Black or African-American, 0.45% American Indian or Alaska Native, 6.32% Asian, 0.06% Native Hawaiian or Pacific Islander, 14.10% of some other race, and 2.99% multi-racial. The jury eligible population is 28.06% Hispanic or Latino. The jury eligible population is 46.13% Male and 53.87% Female.

21. The jury eligible population for the White Plains Division in 2018 is 76.06% White, 12.45% Black or African-American, 0.29% American Indian or Alaska Native, 3.96%

Asian, 0.04% Native Hawaiian or Pacific Islander, 5.15% of some other race, and 2.06% multi-racial. The jury eligible population is 14.12% Hispanic or Latino. The jury eligible population is 48.17% Male and 51.83% Female.

GROUPS EXCLUDED FROM THE VOTER REGISTRATION LIST

22. There are three large groups of registered voters who are excluded from possible jury service in the White Plains Division. These groups are 1) inactive voters in Orange, Putnam, Rockland, Sullivan, and Westchester counties, 2) voters eliminated by the incorrect proration of Putnam, Rockland, and Westchester counties, and 3) voters in Dutchess, Orange, Putnam, and Sullivan counties with alternate mailing addresses in the voter registration lists.

23. The voter registration lists in New York identifies each voter as active or inactive. Inactive voters are registered voters and can vote on election day in their proper polling station. After a period of time inactive voters can be removed from the voter registration list.

24. Active and inactive voters were included from Dutchess county, but inactive voters in Orange, Putnam, Rockland, Sullivan, and Westchester counties were excluded.

25. The exclusion of inactive voters is inconsistent with using the voter registration lists of the counties as described in the Jury Plan Section IIIA.

26. The inclusion of inactive voters in Dutchess county is inconsistent with the exclusion of inactive voters in Orange, Putnam, Rockland, Sullivan, and Westchester counties.

27. Like active voters, some of the inactive voters in Dutchess county were selected for the Master Jury Wheel. Like active voters, some of the inactive voters in Dutchess county who were selected from the Master Jury Wheel were then sent a qualification questionnaire and returned the questionnaire indicating that they were eligible for jury service. These inactive voters were included in the Qualified Jury Wheel.

28. While the New York voter registration lists do not include a racial or ethnic designation for each voter, the standard statistical method of geocoding by Zip Code can be used to estimate the demographic characteristics of voters. Geocoding is the process of using the address or Zip Code of an individual to estimate their demographics using aggregate census numbers such as the 2018 American Community Survey 5 Year Average.

29. Using geocoding, the inactive voters in Dutchess county are disproportionately Black or African-American persons and Hispanic or Latino persons compared to the active voters in Dutchess county. Black or African-American persons are 8.85% of the active voters and 10.38% of the inactive voters. Hispanic or Latino persons are 7.97% of the active voters and 8.23% of the inactive voters.

30. Because the voter registration files received for Orange, Putnam, Rockland, Sullivan, and Westchester counties did not include inactive voters, geocoding of the inactive voters in these counties is not possible with the supplied data.

31. The New York State Board of Elections posts historical summaries of the voter registration lists for various dates including November 1st, 2016 corresponding to the time period for the voter registration lists used to construct the Master Jury Wheel in this case. This report is titled NYSVoter Enrollment by County, Party Affiliation and Status Voters Registered as of November 1, 2016.

32. The New York State Board of Elections states that as of November 1st, 2016 there were 18,712 inactive voters in Orange county, 5,357 inactive voters in Putnam county, 13,664 inactive voters in Rockland county, 7,141 inactive voters in Sullivan county, and 53,001 inactive voters in Westchester county. There were 97,875 inactive voters in total who were not included in the creation of the Master Jury Wheel for the White Plains Division.

33. The Jury Plan in Section IIIA states that "The number of names to be drawn from each county shall reasonably reflect the relative number of registered voters in each county within the respective Master Jury Wheels." The process to implement this requirement is shown in "Item 12 Calculation of the Div" supplied in the data.

34. The proration of counties in the Manhattan and White Plains Divisions is complicated by the fact that the divisions have three counties, Putnam, Rockland, and Westchester counties, which are in both divisions.

35. The proration of counties in the Manhattan Division is made according to the actual number of registered voters, but the proration of counties in the White Plains Division is made with the number of registered voters in Putnam, Rockland, and Westchester counties minus the number of registered voters selected in those counties for the Manhattan Division.

36. The process implemented prevents jurors in Putnam, Rockland, and Westchester counties from being selected for both the Manhattan Division Master Jury Wheel and the White Plains Division Master Jury Wheel. However, the process does not maintain the relative number of registered voters in each county for the White Plains Division. For example, Bronx county is 27.67% of the registered voters in the Manhattan Division and 27.51% of the Manhattan Division Master Jury Wheel. New York county is 39.07% (voters) and 39.85% (jury), Putnam county is 2.46% (voters) and 2.45% (jury), Rockland is 7.44% (voters) and 7.95% (jury), and Westchester county is 23.36% (voters) and 23.23% (jury). However, in the White Plains Division, Dutchess is 14.94% (voters) and 19.07% (jury), Orange is 16.60% (voters) and 21.19% (jury), Sullivan is 3.46% (voters) and 4.42% (jury), Putnam is 4.81% (voters) and 4.09% (jury), Rockland is 14.54% (voters) and 12.38% (jury), and Westchester is 45.64% (jury) and 38.84% (jury).

37. Put another way, the process selects 1 out of every 3 registered voters from each county in the Manhattan Division for the Manhattan Division Master Jury Wheel. The process selects 1 out of every 3 registered voters from Dutchess, Orange, and Sullivan counties in the White Plains Division for the White Plains Division Master Jury Wheel. However, the process implemented, as opposed to described in the Jury Plan, selects 1 out of every 4.5 registered voters from Putnam, Rockland, and Westchester counties for the

White Plains Division Master Jury Wheel. (The registered voters from Putnam, Rockland, and Westchester counties are picked in a pattern of the fourth registered voter and then the fifth registered voter and then repeating.)

38. The result for the White Plains Division is that effectively 285,347 registered voters who should have been considered for the White Plains Division Master Jury Wheel were excluded. These excluded registered voters would not be the same voters as were selected in the Manhattan Division and so there would not be persons selected for both the Manhattan Division and the White Plains Division.

39. The selection could be implemented by selecting 1 out of every 3 registered voters in Putnam, Rockland, and Westchester counties as long as the initial person selected was either the first or the third person. The selection for the Manhattan Division was 1 out of every 3 registered voters starting with the second person. In this way the number chosen for each division will both match the relative size of the voter lists of the counties and no person will be selected for both divisions.

40. Using the jury eligible population, the voters excluded in the overlapping counties of Putnam, Rockland, and Westchester counties by the incorrect proration are disproportionately Black or African-American persons and Hispanic or Latino persons compared to the voters in the rest of the White Plains Division. The population in the overlapping counties is 13.71% Black or African-American persons while the population in the rest of the White Plains Division is 10.30% Black or African-American persons. The population in the overlapping counties is 15.20% Hispanic or Latino persons while the population in the rest of the White Plains Division is 12.29% Hispanic or Latino persons.

41. The voter registration lists for Dutchess, Orange, Putnam, Rockland, and Sullivan counties include a registration address as well as for some voters, an alternate mailing address. The voter registration list for Westchester county includes a registration address but not an alternate mailing address.

42. In the process of selecting persons from the voter registration list of Rockland county, the alternate mailing address, which is only supplied for some voters, was successfully transferred to the Master Jury Wheel as the address for communications from the Court. Voters who did not have an alternate mailing address, were placed in the Master Jury Wheel with their primary address. However, in the process of selecting persons from the voter registration lists of Dutchess, Orange, Putnam, and Sullivan counties, the alternate mailing address was not successfully transferred to the Master Jury Wheel. Specifically, persons from Dutchess, Orange, Putnam, and Sullivan counties with an alternate mailing address, including a Zip Code, in the voter registration lists do not have a Zip Code in the Master Jury Wheel for the address used for qualification questionnaires and summons. Many alternate mailing addresses are Post Office Boxes and so require a Zip Code for delivery.

43. None of the persons on the Master Jury Wheel for the White Plains Division from Dutchess, Orange, Putnam, and Sullivan counties who had an alternate mailing address were added to the Qualified Jury Wheel.

44. There were 76,574 persons from Dutchess (25,627 persons), Orange (30,445 persons), Putnam (3,333 persons), and Sullivan (17,169 persons) counties who had an alternate mailing address and whose address in the Master County Jury Wheel was unsuccessfully transferred.

45. Taken together, there were 459,796 registered voters in the White Plains Division who were excluded because they were inactive, affected by the county proration, or had their alternate mailing address unsuccessfully transferred. The 459,796 excluded registered voters would be added to the 955,204 registered voters who were included in the process or amount to an additional 48.14%.

46. The excluded registered voters are unevenly distributed across the White Plains Division. The excluded registered voters would add 14.97% to Dutchess county, 26.12% to Orange county, 81.23% to Putnam county, 54,19% to Rockland county, 108.36% to Sullivan county, and 63.22% to Westchester county.

47. The chances of being selected for the Master Jury Wheel from the full voter registration list in Dutchess county is 1 out of 3.45, for Orange county is 1 out of 3.78, for Putnam county is 1 out of 5.44, for Rockland county is 1 out of 4.63, for Sullivan county is 1 out of 6.25, and for Westchester county is 1 out of 4.90.

EXCLUDED 18, 19, AND 20 YEAR OLDS

48. The Master Jury Wheel is refilled every 4 years. By the end of life of the Master Jury Wheel, persons who are 18, 19, and 20 years old are excluded from jury service. The age groups of 18, 19, and 20 year olds is disproportionately Black or African-American persons and Hispanic or Latino persons compared to the rest of the population in the Manhattan Division.

49. To split the population down to single ages requires the use of the American Community Survey Public Use Microdata Sample (PUMS). The most current version of PUMS is the 2018 5 Year Average and is consistent with the American Community Survey 2018 5 Year Survey numbers used for the population statistics above. Because PUMS is collected on multiple clusters of counties, the PUMS related to the White Plains Division includes Ulster County.

50. The jury eligible population in the White Plains Division (plus Ulster county) that is 18, 19, or 20 years old is disproportionately Black or African-American persons and Hispanic or Latino persons. The jury eligible population is 12.67% Black or African-American persons compared to 11.67% for persons older than age 20. The jury eligible population is 20.04% Hispanic or Latino persons compared to 13.20% for persons older than age 20.

51. The youngest person on the Master Jury Wheel for the White Plains Division was born on December 26th, 1998. The indictment was filed on June 3rd, 2020. On the date of the indictment the youngest possible Grand Juror would be 21 years, 5 months, and 7 days old.

PERSONS MOVING IN THE WHITE PLAINS DIVISION

52. 9.28% of the jury eligible population in the White Plains Division (using the PUMS plus Ulster county) has moved in the last year. Because the Master Jury Wheel is refilled every four years and because the indictment in this case comes at the end of the life of the Master Jury Wheel, the number of persons who have changed address and potentially might not receive qualification forms or summons is exacerbated beyond the yearly moving rate. Black or African-American persons in the White Plains Division move at a higher annual rate of 11.70%. Hispanic or Latino persons in the White Plains Division move at a higher annual rate of 12.70%.

STATISTICAL ANALYSIS OF UNDER REPRESNTATION OF BLACK OR AFRICAN-AMERICAN AND HISPANIC OR LATINO PERSONS

53. The Grand Jurors in this case came from the White Plains Division Qualified Jury Wheel. As stated above, this analysis will compare the demographic characteristics of the White Plains Division Qualified Jury Wheel with the population of the entire Southern District of New York, the Manhattan Division, and the White Plains Division.

54. Form AO-12 reflects the demographic data from the Qualified Jury Wheel of the White Plains Division of the Southern District of New York from which the Grand Jurors were selected.

55. For the Qualified Jury Wheel refilled February 7th, 2017, Form AO-12 reports that the demographics of the Qualified Jury Wheel were 78.70% White, 8.76% Black or African-American, 0.15% American Indian or Alaska Native, 5.22% Asian, 0.15% Native Hawaiian or Pacific Islander, 5.00% of some other race, and 2.02% multi-racial. The Qualified Jury Wheel is 10.48% Hispanic or Latino. The Qualified Jury Wheel is 46.10% Male and 53.90% Female.

56. The demographics on Form AO-12 for the Qualified Jury Wheel are consistent with the demographics of the Qualified Jury Wheel supplied in the data.

57. There are several standard statistical analyses used to analyze the under representation of a distinctive group. The most common and easiest to calculate are Absolute Disparity and Comparative Disparity. From a scientific perspective, the number of Standard Deviations from Expected shows whether the under representation of a group is systematic or merely the result of "luck of the draw."

58. Absolute Disparity is simply the arithmetic difference between the percentage of a distinctive group on the jury list and the percentage of the same distinctive group in the population.

59. Using the demographics of the entire Southern District of New York, the Absolute Disparity for Black or African-American persons on the Qualified Jury Wheel is 9.33% under representation (18.09% minus 8.76%).

60. Using the demographics of the entire Southern District of New York, the Absolute Disparity for Hispanic or Latino persons on the Qualified Jury Wheel is 12.93% under representation (23.41% minus 10.48%).

61. Using the demographics of the Manhattan Division, the Absolute Disparity for Black or African-American persons on the Qualified Jury Wheel is 12.16% under representation (20.92% minus 8.76%).

62. Using the demographics of the Manhattan Division, the Absolute Disparity for Hispanic or Latino persons on the Qualified Jury Wheel is 17.58% under representation (28.06% minus 10.48%).

63. Using the demographics of the White Plains Division, the Absolute Disparity for Black or African-American persons on the Qualified Jury Wheel is 3.69% under representation (12.45% minus 8.76%).

64. Using the demographics of the White Plains Division, the Absolute Disparity for Hispanic or Latino persons on the Qualified Jury Wheel is 3.64% under representation (14.12% minus 10.48%).

COMPARATIVE DISPARITY

65. Comparative Disparity by formula is the Absolute Disparity for a cognizable group divided by the population percentage of that cognizable group. Note that, mathematically, since the population percentage of a cognizable group can never be greater than 100% or 1.00, Comparative Disparity which is divided by something less than or equal to 1.00, will always be greater than Absolute Disparity.

66. Unlike Absolute Disparity, Comparative Disparity is mathematically a rate. That is, Comparative Disparity shows the rate at which a cognizable group is represented. In this way, Comparative Disparity means the same thing for a larger group that it does for a smaller group. A 50% Comparative Disparity means that half of the cognizable group expected is excluded whether that group is a larger part of the population such as White persons (55.16%) or a smaller part of the population such as Black or African-American persons (20.92%).

67. Using the demographics of the entire Southern District of New York, the Comparative Disparity for Black or African-American persons on the Qualified Jury Wheel is 51.58% under representation (9.33% divided by 18.09%). That is, over half the African-American persons that are expected are missing.

68. Using the demographics of the entire Southern District of New York, the Comparative Disparity for Hispanic or Latino persons on the Qualified Jury Wheel is 55.23% under representation (12.93% divided by 23.41%).

69. Using the demographics of the Manhattan Division, the Comparative Disparity for Black or African-American persons on the Jury Wheel is 58.13% under representation (12.16% divided by 20.92%).

70. Using the demographics of the Manhattan Division, the Comparative Disparity for Hispanic or Latino persons on the Qualified Jury Wheel is 62.66% under representation (17.58% divided by 28.06%).

71. Using the demographics of the White Plains Division, the Comparative Disparity for Black or African-American persons on the Qualified Jury Wheel is 29.63% under representation (3.69% divided by 12.45%).

72. Using the demographics of the White Plains Division, the Comparative Disparity for Hispanic or Latino persons on the Qualified Jury Wheel is 25.80% under representation (3.64% divided by 14.12%).

## STANDARD DEVIATIONS FROM EXPECTED

73. Standard Deviation analysis is a widely accepted and fundamental tool used by statisticians to analyze data. Standard Deviation analysis allows statisticians to determine if the under representation of a distinctive group is statistically significant or not. That is, in any group drawn from the population such as a jury list, there are random factors that mean that the demographics of the jury list drawn from the population will not match the population demographics exactly because of "luck of the draw." However, standard deviations allow statisticians to scientifically determine whether the demographics of the jury list diverge substantially enough from the population demographics that the difference is not the product of chance but is systematic. Statisticians use a standard of 2 or 3 standard deviations to determine statistical significance. If there is no systematic under or over representation of a distinctive group, the divergence of demographics should exceed 2 standard deviations only approximately 5% of the time while the divergence of demographics should exceed 3 standard deviations only approximately 0.5% of the time.

74. Using the census population from the Southern District of New York, the Manhattan Division, or the White Plains Division, the percent of Black or African-American persons on the Qualified Jury Wheel differs from the percent of Black or African-American persons in the population by more than 3 standard deviations. In other words, the under representation of Black or African-American persons on the Qualified Jury Wheel is not the result of random factors, chance, or luck, but is the result of a systematic process that under represents Black or African-American persons.

75. Using the census population from the Southern District of New York, the Manhattan Division, or the White Plains Division, the percent of Hispanic or Latino persons on the Qualified Jury Wheel differs from the percent of Hispanic or Latino persons in the population by more than 3 standard deviations. In other words, the under representation of Hispanic or Latino persons on the Qualified Jury Wheel is not the result of random factors, chance, or luck, but is the result of a systematic process that under represents Hispanic or Latino persons.

SYTEMATIC FACTORS OF UNDER REPRESENTATION

76. The Qualified Jury Wheel that was created under represents Black or African-American persons and Hispanic or Latino persons.

77. There are several choices and procedures which lead to the under representation of Black or African-American persons and Hispanic or Latino persons. Some of the choices and procedures overlap, exacerbate, or counteract each other in terms of the under representation.

78. The choice of selecting the Grand Jury from the White Plains Division instead of the Manhattan Division or the entire Southern District of New York causes under representation of Black or African-American persons and Hispanic or Latino persons when compared to the jury eligible population of the Manhattan Division.

79. The choice to use the voter registration list as the sole source of names causes under representation of Black or African-American persons and Hispanic or Latino persons. The voter registration list does not include racial or ethnicity information and so the standard procedure of using zip codes to estimate individual demographic information from the 2018 American Community Survey 5 Year Average is used. Using estimated geocoded results by zip code, the voter registration list under represents Black or African-American persons and Hispanic or Latino persons as compared to the jury eligible population.

80. The exclusion of 18, 19, and 20 year olds as the jury list ages to 3 or more years causes under representation of Black or African-American persons and Hispanic or Latino persons.

81. The aging of the addresses used for qualification questionnaires and summons as the jury list ages to 3 or more years causes under representation of Black or African-American persons and Hispanic or Latino persons.

82. The exclusion of inactive voters from Orange, Putnam, Rockland, Sullivan, and Westchester counties causes under representation of Black or African-American persons and Hispanic or Latino persons.

83. The process of excluding persons from Putnam, Rockland, and Westchester counties because of the incorrect proration of counties causes under representation of Black or African-American persons and Hispanic or Latino persons.

84. The unsuccessful transferring of alternate mailing addresses for some voters from Dutchess, Orange, Putnam, and Sullivan counties causes under representation of White persons using geocoded results by zip code. Since this process counteracts the under representation of Black or African-American persons and Hispanic or Latino persons, correcting the computer process alone without addressing other choices and processes would exacerbate the under representation of Black or African-American persons and Hispanic or Latino persons.

85. The process of selecting every third person, except for Putnam, Rockland, and Westchester counties, from the county voter lists was used. Using geocoded results by

zip code and because the selection process is essentially random, the persons selected for the Master Jury Wheel mirrors the percentage of Black or African-American persons and of Hispanic or Latino persons as compared to the voter registration lists.

86. The mailing of qualification questionnaires is done from a random selection from the Master Jury Wheel. Using geocoded results by zip code and because the selection process is essentially random, the persons mailed a qualification questionnaire mirrors the percentage of Black or African-American persons and of Hispanic or Latino persons as compared to the Master Jury Wheel.

87. Some of the qualification questionnaires that are mailed are returned as undeliverable by the United States Post Office. Using geocoded results by zip code, the persons excluded by having their qualification questionnaire returned by the post office causes under representation of Black or African-American persons and Hispanic or Latino persons as compared to all persons mailed a qualification questionnaire.

88. Some of the qualification questionnaires that are mailed are not returned by the post office and no response is made. Using geocoded results by zip code, the persons excluded by not having a response to their qualification questionnaire causes under representation of Black or African-American persons and Hispanic or Latino persons as compared to all persons mailed a qualification questionnaire.

89. The response from the Jury Clerk about follow up with qualification forms where there is no response is "Persons who fail to respond to the qualification questionnaire are not currently re-mailed due to the volume of the summonses sent out."

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated this 9th day of November 2020

_____Jeffrey Martin