UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

UNITED STATES OF AMERICA,

                                                         20-cr-366 (NSR)

-against-

TYLER ALLEN,

                       Defendant.

-------------------------------------------------------------x

Sentencing Memorandum for Tyler Allen

Theodore S. Green
*Attorney for Tyler Allen*
Green & Willstatter
200 Mamaroneck Avenue - Suite 605
White Plains, New York   10601
(914) 948-5656
theosgreen@msn.com

To: All counsel (by ECF)

Tyler Allen is before the Court for sentencing following his plea of guilty to one count of conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951. The stipulated sentencing guideline range is 70-87 months. Taking into account the factors governed by 18 U.S.C. § 3553(a), the Court should impose a substantially below-guideline sentence.

Tyler Allen is 23 years old, born in Rochester, New York, on May 26, 1998. He was 21 years old (just about to turn 22) at the time of the offense conduct in May 2020.

His father left his home when Tyler was a young child. The father would have periodic visitation with Tyler, but that ended when Tyler was about ten or eleven years old. The father had no significant role in Tyler's upbringing. To this day, Tyler has little information about his father.

Raised by his mother in a home with half-siblings, Tyler recalls a difficult childhood, where he was regularly subjected to physical abuse beginning at about age five. Bruises that he suffered from this abuse brought the attention of school officials but Tyler is unaware of what intervention, if any, was taken by authorities. By age ten, Tyler himself was trying to cope with the abuse by running away from home on occasions. Home life was also complicated by his mother's serious health problems.

At about age eleven, Tyler began living with an aunt, Lesley Travis. Ms. Travis told counsel that she acquired custody of Tyler and his younger sister.

While in the care of his aunt, Tyler found respite from the physical abuse, but he also felt the absence of an emotional bond, particularly as Ms. Travis was raising children of her own in the same household. Beginning at age 14, Tyler began leaving that home and "bounced around" the homes of friends.

1

Tyler did not pose a serious disciplinary problem in school, but he did suffer from anxiety, depression, and inability to focus.  He also believes he had a learning disability, possibly dyslexia, and he recalls underging counseling and  being provided with a special teacher's assistant, while remaining enrolled in regular classrooms.

Given this upbringing – including the absence of a father figure, unstable living situations, his mother's illness, physical abuse, and learning difficulties – it is remarkable that, as an adolescent, Tyler did not fall prey to even more serious problems.  In fact, Tyler successfully completed high school by age 19, and he has no prior criminal record.    Moreover, his history of substance abuse bears indications of a youngster trying to self-medicate as a way of coping with stress.  He began using marihuana at age eleven, and, in his teenaged years, used medications such as Xanax, Percocet and oxycodone.

Tyler does not have a history of engaging in acts of violence and his involvement in this offense has weighed heavily on him.  While in custody, he has experienced depression and sleeplessness, for which he is prescribed medication.  He has good insights into his behavior and understands the consequences of his poor choices, how he has let down those close to him, and how he has impeded his own progress through life.

With regard to the guidelines offense level, the largest sentencing enhancement here involves the multi-million dollar "intended loss", which is estimated from the value of virtual currency assets, and calls for a seven-level increase above the base offense level.  U.S.S.G. § 2B3.1(b)(7)(H); PSR ¶30.   The defense does not dispute the enhancement, but for  purposes of 18 U.S.C. § 3553(a) analysis, we do contend that this large enhancement overstates Mr. Allen's stake in the venture.  At the time of the offense conduct, Mr. Allen was destitute and homeless, living out of a  shelter in

Rochester.  He did not have the resources or the inclination to conceive of or implement the scheme, and the person or persons who masterminded it did so remotely, insulating themselves and their identities by recruiting others.  They were anonymous even to Mr. Allen. Whatever equipment Mr. Allen used in the offense was supplied to him and, while he was hoping to receive some compensation,  he was not expecting to profit anywhere near commensurate with the "intended loss" amount.  It appears, moreover, that the leader or leaders have so far escaped arrest, precisely because they used "recruits" for the roles that carried the highest risk of apprehension.

Mr. Allen has been in detention for more than 13 months, under difficult conditions.  He was initially detained at the Metropolitan Correctional Center (MCC) in Manhattan before being transferred to the Essex County Correctional Facility in New Jersey.  His detention began at a time when the COVID-19 crisis was well under way.  Due to the pandemic, and his geographical remoteness from his family in Rochester, Mr. Allen has been deprived of  in-person contact with family members and loved ones.  Mr. Allen has a risk factor – obesity – that puts him at high risk of serious illness from COVID-19, and he  also suffers from asthma, which poses an additional risk factor.[1]  He has lived in fear of contracting the virus in the enclosed environment of a detention facility.

Medical records from when Tyler was detained at MCC show that he was seen by the psychology department, that he was reported at one point to have suffered an anxiety attack and was assessed as suffering from anxiety, and that he was prescribed medication including risperidone

---

[1]Centers for Disease Control and Prevention (CDC). https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditi ons.html (accessed June 28, 2021).

(Risperdal), a psychotropic medication that can be prescribed, for example, to treat bipolar disorder. At the Essex County jail, he sees a a psychiatrist monthly and continues to take Risperdal.

The Court may consider the risks and stresses associated with the pandemic in a prison setting in mitigation of sentence, even where the mitigation does not result in the defendant's immediate release from custody. *See United States v. Brooker*, 976 F.3d 228, 237-238 (2d Cir. 2020) (sentence reduction under 18 U.S.C. §3582(c)(1)(A) can take into account affects of COVID-19 pandemic even where the reduction does not eliminate the prison sentence). These factors should serve as an additional basis for mitigating punishment in Mr. Allen's case.

Even without the additional stress caused by the pandemic, for someone like Mr. Allen, who has no criminal history, the experience of being detained in jail has proven to be sobering and traumatic.

While Tyler does not have an extensive work history, he has proven capable of maintaining meaningful employment, having previously worked for a time for a landscaping business, a job he obtained through one of his former school teachers. He is interested in continuing to work in that field once released from custody.

Notwithstanding his childhood history, Tyler has also maintained contact with his mother while in custody, and she has been in regular contact with undersigned counsel.

Mr. Allen is also the father of a two-year-old daughter, who is in the care of a grandparent. While Tyler is no longer in a relationsip with the child's mother, Ms. Cameron Butler, they remain on friendly terms. Undersigned counsel interviewed a family friend, Ms. Phousathone Siriphanthong, who has know Tyler since their teenaged years and is friendly with Ms. Butler. Ms. Siriphanthong describes Tyler as a generous person and caring and responsible father. Tyler plans to continue to

4

have a parenting role in his child's life upon release.

As a first-time offender, the sentencing goals of just punishment and deterrence can be satisfied here with a sentence substantially below the 70-month guideline minimum. Going forward, Mr. Allen should benefit from mental health counseling and vocational training, rather than a prolonged period of custody.

Mr. Allen has expressed interest in receiving substance abuse treatment. Accordingly, we ask that the Court recommend that Mr. Allen be admitted to any appropriate BOP programs for substance abuse including, if available, the Residential Drug Abuse Program (RDAP), and that Mr. Allen also be admitted to any additional BOP programs under the First Step Act or otherwise, including those that may permit him to earn additional credits towards his sentence. We also ask that the Court recommend that Mr. Allen receive mental health counseling and treatment while in custody.

Dated:  June 30, 2021

Respectfully submitted,
/s/ *Theodore S. Green*

_____
Theodore S. Green
*Attorney for Tyler Allen*
Green & Willstatter
200 Mamaroneck Avenue - Suite 605
White Plains, New York   10601
(914) 948-5656
theosgreen@msn.com

To: All counsel (by ECF)